UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAKELIN BORREGO MARQUEZ,<br><br>                              Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,<br><br>                              Respondents. | Case No.:  25cv3538-LL-VET<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>[ECF No. 1] |

Before the Court is Petitioner Jakelin Borrego Marquez's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Return [ECF No. 4], and Petitioner filed a Traverse [ECF No. 5]. For the reasons set forth below, the Court **DENIES** the Petition.

## I.    BACKGROUND

Petitioner is a citizen of Cuba and attests that she initially arrived in the United States around 1994 and applied for asylum. Pet. ¶ 23. Respondents provide a declaration with an attestation that Petitioner attempted to enter the United States in October 2003 by falsely claiming United States citizenship, was subsequently taken into U.S. Immigration and

/ / /

1

Customs Enforcement custody, released on bond, and then went to Mexico.[1] ECF No. 4-1, Declaration of Daniel Negrin ("Negrin Decl."), ¶ 4. Respondents further attest that on July 16, 2004, Petitioner again attempted to enter the United States by falsely claiming citizenship, was released on bond three days later, and then ordered removed to Mexico by an immigration judge on August 23, 2004. *Id.* ¶ 5; ECF No. 4-3 at 2. After Petitioner was removed to Mexico, she was charged and convicted of an act of terrorism in Mexico, served twelve years, and was released in 2016. Negrin Decl. ¶ 8.; Pet. ¶ 24.

In January 2019, Petitioner returned to the United States and applied for admission at a port of entry. Negrin Decl. ¶ 9; Pet. ¶¶ 24. She was taken into custody and issued a Notice to Appear, placing her in removal proceedings on February 28, 2019. Negrin Decl. ¶ 9. She was charged with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant not in possession of a valid entry document. *Id.* On October 15, 2019, an immigration judge denied Petitioner's application for asylum, withholding of removal, and CAT protection, and ordered her removal to Cuba. Negrin Decl. ¶ 10; ECF No. 4-3 at 4. When Petitioner could not be removed to Cuba, she was released on an Order of Supervision on about November 20, 2019. Negrin Decl. ¶ 11; Pet. ¶ 25. During this time, she was given employment authorization and attended her appointments with ICE as directed. Pet. ¶ 25.

In January 2025, Petitioner "reported for a scheduled program check-in." Negrin Decl. ¶ 12. Respondents attest that ICE re-detained Petitioner following "a review of records revealing multiple criminal arrests and immigration violations from 1999 to 2022." *Id.* Petitioner attests that she was detained by ICE without explanation and then removed to Mexico on February 14, 2025. Pet. ¶ 26; Negrin Decl. ¶ 12.

/ / /

---

[1] Petitioner's attorney notes that he did not have access to the EOIR Record of Proceedings because he is not her attorney in the removal case, and that he "agrees with the more detailed recitation of facts" provided by respondents. ECF No. 5 at 2.

25cv3538-LL-VET

In April 2025, Petitioner attests that she was the victim of an attempted kidnapping in Mexico, and she attempted to return to the United States unlawfully on May 11, 2025 because she feared for her life. Pet. ¶ 26. She was apprehended by Border Patrol agents and then placed in federal custody for criminal prosecution; she was subsequently convicted in the Southern District of California of the crime of illegal reentry under 8 U.S.C. § 1325(a)(1) and sentenced to time served (100 days). *Id.* ¶¶ 26–27; Negrin Decl. ¶ 13.

On August 19, 2025, upon her release from the federal jail, she was detained by DHS/ICE and was sent to Otay Mesa where she remains currently detained. Pet. ¶ 27. Respondents attest that "during intake into ICE custody, Petitioner expressed a desire to be voluntarily removed to Mexico as part of the Incentivized Voluntary Departure program." Negrin Decl. ¶ 14. Petitioner was placed into expedited removal proceedings on August 19, 2025, issued a Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1), and mandatorily detained under 8 U.S.C. § 1225(b)(1). *Id.* ¶ 15. Petitioner was later given a reasonable fear interview and on October 2, 2025, an asylum officer found Petitioner did not have a credible fear of persecution or torture with respect to Cuba. *Id.* ¶ 16; Pet ¶ 28. An immigration judge affirmed the negative credible fear determination on October 14, 2025 and referred the matter back to DHS for execution of the Order of Expedited Removal, making this a final order of removal. Negrin Decl. ¶ 17; ECF No. 4-3 at 6–7.

Because Cuba previously declined to allow Petitioner to return, ICE Enforcement and Removal Operations (ERO) has been seeking a third country for Petitioner's removal. Negrin Decl. ¶¶ 18–20. On October 22, 2025, ICE attempted to remove Petitioner to Mexico based on her previous request to voluntarily depart to Mexico, but Petitioner "failed to comply." *Id.* ¶ 18. ERO then contacted ERO Removal and International Operations to seek a third country for removal and has been requesting updates. *Id.* ¶¶ 19–20.

On December 12, 2025, Petitioner filed the instant Petition. *Id.*

/ / /

25cv3538-LL-VET

## II.    LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III.    DISCUSSION

Petitioner contends that (1) Respondents' revocation of her 2019 Order of Supervision without affording her an informal interview and opportunity to respond to the reasons for the revocation violates DHS regulations, the Administrative Procedure Act, and the Fifth Amendment's Due Process Clause; and (2) her current prolonged detention with no significant likelihood of removal in the foreseeable future also violates *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Due Process Clause. Pet. ¶¶ 14–22, 29–41.

Respondents argue that the only issue before the Court is whether Petitioner's current detention—which began on August 19, 2025 when she was transferred to ICE custody and "stems from her unlawful entry on May 11, 2025"—is unconstitutionally prolonged under *Zadvydas* because Petitioner's claims regarding the revocation of her 2019 Order of Supervision were mooted upon revocation and removal. ECF No. 4 at 4.

The Court finds Petitioner's removal to Mexico mooted her claims regarding the revocation of her 2019 Order of Supervision. Assuming without deciding that Petitioner was wrongfully re-detained in January 2025, the remedy would have been release on the conditions of her prior Order of Supervision, pending her removal proceedings. Then Petitioner's removal proceedings concluded with her removal to Mexico. Petitioner's current detention does not stem from the revocation of her 2019 Order of Supervision and / / /

4

25cv3538-LL-VET

so the Court can offer no relief for her previous re-detention from January to February 2025. The Court now turns to the *Zadvydas* claim.

When a noncitizen has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for up to ninety days pending the government's efforts to secure their removal. *See* 8 U.S.C. § 1231(a)(1)–(2). This ninety-day period is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). After the removal period, this statute "limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States" and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If the petitioner satisfies their initial burden, then the burden shifts to the government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the noncitizen's release may be "conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 700; *see* 8 U.S.C. § 1231(a)(3).

Respondents argue that it has been less than six months since Petitioner's removal order became final on October 14, 2025, and so her detention is currently within the "presumptively reasonable" removal period. ECF No. 4 at 5; Negrin Decl. ¶ 17; ECF No. 4-3 at 6–7. Petitioner does not dispute the date her removal order became final, but instead argues that she has exceeded the six-month presumptively reasonable period because the time she was detained in 2019—between January and November—should count in the six-month period calculation. ECF No. 5 at 3.

///

The Court is not persuaded by Petitioner's argument. Petitioner argues that in this district, non-consecutive post-removal order detention periods should be measured cumulatively. ECF No. 5 at 3. While that is true, that is not Petitioner's situation. In the case Petitioner relies on—and in the cases it in turn cites—the noncitizen was not removed from the country between different detention periods. *See Phan v. Warden of Otay Mesa Det. Facility*, No. 25-CV-02369-AJB-BLM, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) (collecting cases). Petitioner's detention in 2019 resulted in her removal to Mexico in February 2025. The Supreme Court in *Zadvydas* held that post-removal detention is limited "to a period necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. Because Petitioner's previous 2019 detention resulted in her removal, that period of detention has no effect on her current detention, which stems from her unlawful entry in May 2025.

The Court finds that Petitioner's detention of approximately four months— beginning on October 14, 2025—is presumptively reasonable, and therefore her claim is premature. *See Zadvydas*, 533 U.S. at 701; *see also, e.g.*, *Khalilova v. Smith*, No. 25-CV-2140 JLS (DDL), 2025 WL 3089522, at *3 (S.D. Cal. Nov. 5, 2025) (finding the petitioner's habeas petition premature when the six-month period had not passed). Additionally, Petitioner has not met her burden to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, stating only that she hasn't been removed since August 2025 and that "she does not believe her removal to any country in the world is imminent." ECF No. 5 at 4. Accordingly, the Court finds that Petitioner's current detention does not violate *Zadvydas* or the Due Process Clause.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

6

25cv3538-LL-VET

## IV.   CONCLUSION

Based on the above, the Court **DENIES** Petitioner's Petition for Writ of Habeas Corpus without prejudice. As this concludes the litigation in this matter, the Clerk of Court shall close this matter.

**IT IS SO ORDERED.**

Dated:  February 25, 2026

_____

Honorable Linda Lopez
United States District Judge

25cv3538-LL-VET